**SCHRAM v. KOPPIN.**

Civ. A. No. 138.

District Court, E. D. Michigan, S. D.

Sept. 17, 1940.

Robert S. Marx, Orville J. Thill, and Frank M. Wiseman, all of Detroit, Mich., for plaintiff.

Herbert C. Munro, of Detroit, Mich., for defendant.

PICARD, District Judge.

This is an action brought by B. C. Schram, as Receiver of First National Bank-Detroit, a federal banking corporation, against Henry S. Koppin, on some notes given in 1932 and '33 and which would have been outlawed under the statute of limitations at the end of 1938 and the first part of 1939. There were about eighteen notes in all. Suit was started by plaintiff in October, 1938 at which time the statute of limitations had not expired. However, when service was actually obtained, some fifteen months thereafter, the notes were outlawed.

The defendant contended: First, that suit was not "commenced" until service was actually made; or second, that service should have been made within three months of the taking out of the original writ after aliases had been obtained.

The court in considering the second question took evidence of its own volition on whether due diligence had been used by plaintiff's process servers during the time the writ remained in their hands on the theory that no plaintiff should be permitted to toll the statute of limitations unreasonably by starting suit just within the time limit and then not trying to obtain service at all. This of course would be unfair to defendant. On the other hand it would not be equitable for defendant to escape his just obligations by remaining concealed after a case had been started against him in an effort to utilize the statute of limitations. This was the charge made by plaintiff against defendant.

#### Further Findings of Facts.

This court finds as a matter of fact that the writ when issued on the complaint was placed in the hands of the marshal who made the usual attempt at service; that defendant had discontinued his business; that his name did not appear in either the telephone or city directories; that his mail went to the home of a former secretary; and that no forwarding address had been left at the building where he had formerly had his office. The court further finds that after the writ had been in the hands of the marshal from December 1938 until March 1939 it was placed in the hands of two special

process servers who testified to having made a strenuous attempt to locate defendant. They were once told that he was living in Toledo and once that he had moved to California. Defendant admitted that during one extended period his wife had lived in Toledo where he often visited her, but claimed that he always kept his domicile in Detroit. It further appears that he did not vote during these years until after service in the present suit. From all this the court is convinced that defendant had made an attempt to evade his creditors and particularly servers of any summons. So the equities on the question of due diligence were in favor of the plaintiff, there remaining to the court the two legal questions presented by defendant.

### Conclusions of Law.

■ This suit was started about a month and a half after the new Rules of Civil Procedure went into effect, September 16, 1938, 28 U.S.C.A. following section 723c.

Rule 3 of those rules provides as follows: *"Commencement of Action.* A civil action is commenced by filing a complaint with the court."

The meaning of that rule is not ambiguous. The filing of the complaint and the issuance of the original writ undoubtedly started suit unless the courts have since by their interpretation ruled otherwise. The case cited by defendant, Detroit Free Press Co. v. Bagg, 78 Mich. 650, 44 N.W. 149, does not apply. As a matter of fact the Free Press case is overruled by Christe v. Springfield Fire & Marine Ins. Co., 207 Mich. 12, 173 N.W. 341. So whether suit was or was not commenced under the old rules or old decisions is immaterial since both under the Federal and State decisions the action of plaintiff was sufficient to preserve his rights within the six year period provided by the statute of limitations. He has "commenced" his suit. Gallagher v. Carroll, D.C., 27 F.Supp. 568.

■ The answer to the second question might be more difficult had not this court decided that plaintiff had used due diligence in attempting to make service.

Under the old rules and the so-called "conformity act", 28 U.S.C.A. § 724, governing service of process, the Federal Court followed the State procedure and a return day in the original suit was always specified within which the writ must be served. If no service was obtained during

that time, an alias was issued and many times alias followed alias ad infinitum. Under the new rules, however, there is no provision within which time service must be made. This innovation was the subject of some consideration at the several conferences called to discuss the new rules before their adoption although not as much as one would expect. The old procedure of issuing alias summons was discontinued and the no process within a year rule was suggested as being a safeguard to any fraudulent tolling of the statute of limitations. In any event the Federal form of summons now prescribed under Rule 4 has no limitation within which service must be made and it may have been the intent of this section that in a disputed case such as the present, the question of due diligence might be decided by the court.

Rule 83 of the new rules provides that district courts may enact supplementary rules "not inconsistent with" the new rules. The district rules formerly enforced in this district conformed with the state rules but no rules have been adopted in this district since these new rules went into effect. It might even be argued that there is some doubt of the right of the district to put a limitation on the time within which a writ issued must be served. Might this not be "inconsistent" with the intent of the new rules?

But here we are reminded by defendant that Rule 4 does provide that service may be made "in the manner prescribed by the law of the state in which the service is made for the service of summons or other like process upon any such defendant is an action brought in the courts of general jurisdiction of that state", and among these provisions the Michigan rules provide for service by registered mail. Defendant's counsel contends that plaintiff could have taken advantage of Michigan Rule No. 16 and served upon defendant by registered mail. The answer to this is simple —plaintiff must necessarily have an address to which he could send a registered letter. Sending it to the secretary of the defendant would not have been sufficient. In any event she was no longer his secretary.

Defendant contends also that a copy of the summons could have been left at defendant's dwelling house or usual place of abode with a person of suitable age and discretion residing therein; but here again the court points out that plaintiff knew of

no usual place of abode or dwelling house of defendant and couldn't by even extraordinary efforts have located the same. Defendant suggests that plaintiff could have contacted Lansing and learned his whereabouts by his driver's license. Well after all getting service is not a game where the police officer must show that he exhausted all possible sources of information.

The third method suggested by defendant is that he could have been served personally, which is just what plaintiff tried to do over a period of months without success because defendant was evidently in hiding aided by verbal assertions of absence from the state by his relatives.

For the above reasons, this court does not feel that defendant should be permitted through his own wrongful acts to escape being required to meet the merits of plaintiff's contentions and since it has been admitted that there is no defense, the court holds that plaintiff is entitled to recover the full amount.