The SINGER MANUFACTURING COMPANY and Singer Sewing Machine Company, Plaintiffs,

v.

SINGER UPHOLSTERING & SEWING CO., Inc., Alexander Showe, Murray L. Cohen and Alexander L. Josselson, Defendants.

Civ. A. No. 11372.

United States District Court
W. D. Pennsylvania.
March 1, 1955.

John F. Ryan and Burgess, Ryan & Hicks, New York City, and Julian Miller and Brown, Critchlow, Flick & Peckham, Pittsburgh, Pa., for plaintiffs.

James A. Danahey and J. I. Simon, Pittsburgh, Pa., for defendants.

WILLSON, District Judge.

This case was tried before me, non-jury, over a period of four days. At the close of the trial, I indicated to counsel that plaintiffs had proved their right to relief by a fair preponderance of the evidence. In forming defendant corporation, the individual defendants deliberately and without justification appropriated the name "Singer" with the result that defendant corporation very quickly built a substantial volume of business, largely as the result of newspaper and other advertising. The advertising produced the leads which defendants' salesmen followed up by making personal calls. Because of defendants' method of doing business, numerous incidents of actual confusion have arisen, plaintiffs' name and reputation in the sewing field having been so long and so widely known that the public is led to believe that defendants' activities under the name "Singer" are those of the plaintiffs. Plaintiffs seek injunctive relief. They also seek an accounting for profits, or in lieu thereof, litigation expenses and punitive damages. Oral argument has been held and briefs filed, which have been considered.

The Court makes the following
Findings of Fact

1. Plaintiffs are New Jersey corporations and Singer Sewing Machine Company is a wholly owned subsidiary of The Singer Manufacturing Company.

2. Defendant, Singer Upholstering and Sewing Company, is a Pennsylvania corporation.

3. At the time the complaint was filed, the individual defendants, Alexander Showe, Murray L. Cohen and Alexander L. Josselson, were residents of this judicial district.

4. This is a civil action for trademark infringement and unfair competi-

tion arising between citizens of different States and involving a sum or value exceeding $3,000, exclusive of interest and costs.

5. Plaintiff, The Singer Manufacturing Company, was organized in 1873 and immediately upon its organization it entered into the business of manufacturing and selling sewing machines and furniture appurtenant thereto, which business had been established by its predecessors as early as the year 1851, and ever since has been continuously engaged and still is engaged in said business.

6. Plaintiff, Singer Sewing Machine Company, was organized in 1904, and since has established over 1500 stores throughout the United States for the distribution and repair of its products manufactured or supplied by plaintiff, The Singer Manufacturing Company, including sewing machines, vacuum cleaners, fans, furniture, and sewing accessories of various kinds, which stores have come to be known to the public as "Singer Sewing Centers" where the products of plaintiff, The Singer Manufacturing Company, are available. Many of the said "Singer Sewing Centers" are located in Pennsylvania and some in the City of Pittsburgh.

7. Prior to the year 1873, the predecessors of plaintiff, The Singer Manufacturing Company, adopted the name "Singer" as a trade-mark for its merchandise including its sewing machines, furniture and sewing accessories, which name and trade-mark plaintiff, The Singer Manufacturing Company, has employed since 1873 in its said business, as, for example, by applying it to its goods and by displaying it in printed matter and in various sundry ways.

8. Prior to 1904, plaintiff, The Singer Manufacturing Company, did display and since 1904 plaintiff, Singer Sewing Machine Company, has continuously displayed in a prominent position on store fronts, in advertising, in newspapers, periodicals, price lists, telephone directories and other advertising matter, to an enormous extent throughout the world, the mark "Singer" and an arbitrary sign or mark incorporating a prominent or predominant letter "S" for the purpose of making known to the public the products of plaintiff, The Singer Manufacturing Company, and to identify the "Singer Sewing Centers" as places where said products were available and could be serviced.

9. The public commonly refers to Singer Sewing Machine Company by the names "Singer" or "Singer Company."

10. Plaintiff, Singer Sewing Machine Company, conducts classes in sewing instruction in its "Singer Sewing Centers" including instruction in making furniture slip covers, curtains and draperies. About 300,000 persons a year attend such classes in the United States. About 13,000 persons take sewing instruction each year in the "Singer Sewing Centers" under the jurisdiction of the Pittsburgh Agency.

11. In the past four years plaintiff, Singer Sewing Machine Company, has sold about $150,000,000 worth of furniture and the plaintiff, The Singer Manufacturing Company, operates three factories in the United States for the exclusive manufacture of furniture where it employs about 2,500 persons.

12. About $25,000,000 has been spent over a twenty year period in advertising to keep plaintiffs' names, trade-marks, services and merchandise before the public.

13. The trade-mark "Singer," the letter "S" trade-mark, used on or in association with the products of plaintiff, The Singer Manufacturing Company, and the trade-name "Singer Sewing Center" used by plaintiff, Singer Sewing Machine Company, for the stores where such products are available to the public have acquired a world-wide, favorable and very valuable reputation by reason of the high standards reflected in the display methods, advertising copy, sales policies, quality of merchandise offered for sale, customer relations, sewing instruction and servicing of machines sold, all of which have established an extraordinarily high good will for the plaintiffs and their products; and the public

has come to know and identify the said products, shops and services throughout the world by said trade-marks, trade-names and trade indicia.

14. The corporate defendant was organized by the individual defendants and incorporated January 9, 1952, under the name "Singer Upholstering and Sewing Company."

15. From the incorporation of Singer Upholstering and Sewing Company to March 18, 1953, Showe was president, Cohen vice president and Josselson secretary-treasurer; they acted as the sole directors of the corporation; and each of these individual defendants owned one-third of the stock of the corporation.

16. On March 18, 1953, Showe assigned his one-third share to the corporation and resigned as president. At the time of the trial, Josselson and Cohen were the only officers and directors of the defendant corporation and the owners of all the stock thereof.

17. At the time of its incorporation and ever since then, no one by the name of "Singer" was connected with the corporate defendant.

18. The defendants' business includes the reupholstering and restyling of old furniture, the sale of new furniture and the sale of furniture slip covers and draperies.

19. Defendants' business involved some telephone solicitation but nearly all of it is the result of advertising in newspapers, radio and television.

20. Defendants use the name "Singer" standing alone in their newspaper, radio and television advertising to identify their business, products and services and in at least one of their television presentations, they identified themselves only by the name "Singer" accompanied by a telephone number as shown in Plaintiffs' Exhibit 40.

21. Even where defendants use the full corporate name in their advertising they overemphasize the name "Singer" and the letter "S" so that these stand out from the other words of the corporate name.

22. Besides exaggerating the letter "S" of the name "Singer," defendants use a stylized letter "S" standing alone on their letterheads as shown by Plaintiffs' Exhibit 17.

23. Defendants' usual procedure in soliciting sales was to make an appointment for their salesman to call at the home of the prospective customer who had responded to defendants' advertising or who had been solicited over the telephone. Many of these salesmen introduced themselves by such terms as "I am the Singer man" or "I am from Singer."

24. The usual procedure was for the salesman to seat the prospect or prospects and show them his "pitch" book and fabrics, while he carried on his sales talk characterized as his "spiel." The "pitch" book contained page after page carrying the single word "Singer" to identify defendants and their business and included illustrations of "Singer's Two Huge Factories," each of which was identified by a sign carrying the single word "Singer" and this despite the fact that defendants' business occupied only a floor in a loft building.

25. The fabrics shown to the prospect carry tags upon which are printed the phrase "Singer's Deluxe Fabric" or "Singer's Standard Fabric."

26. Defendants' advertising and stationery carried the phrase "78 years of upholstering experience." After objection by the Better Business Bureau, this phrase was discontinued in the newspaper advertising, but its use elsewhere was not discontinued and defendants' salesmen used this expression in trying to sell their wares. This phrase used in conjunction with "Singer" caused many customers to conclude that defendants' business was connected with the old well established business of plaintiffs.

27. Defendants' salesmen engaged in passive misrepresentations during the sales presentations in customers' homes, failing to speak when under a duty to do so in order to disabuse customers of existing confusion between the plaintiffs' business and that of defendants.

28. Defendants were aware of the passive misrepresentations of their salesmen and not only failed to stamp them out but actually encouraged them.

29. Defendants' salesmen made direct misrepresentations to connect defendants with plaintiffs and although defendants knew of such misrepresentations they failed to take effective steps to stop them.

30. Defendants' actions in prominently displaying the word "Singer" and a prominent letter "S" in their newspaper, radio and television advertising, in their "pitch" book, in their corporate name and on their stationery even after notice from plaintiffs' attorneys shows a deliberate, willful and wanton disregard of plaintiffs' rights and such action paved the way for and enabled their salesmen to deceive the public by passive and sometimes active misrepresentation as to a connection between the businesses of the parties.

31. Defendants' actions have caused confusion in the minds of the purchasing public who have been led to believe by defendants' advertising, "pitch" book, stationery and misrepresentations that the corporate defendant is connected in some way with the business of plaintiffs.

32. Defendant Showe, while president of Singer Upholstering and Sewing Company, instructed a telephone solicitor to inform prospective customers that the defendant corporation was a branch of the Singer Sewing Machine Company and that draperies and upholstery sold by corporate defendant were sewn by Singer Sewing Machine Company.

33. Actual confusion in the minds of the public as to a business connection between the parties has been amply proved.

34. Plaintiffs have incurred expenses other than attorney's fees in the amount of $2,783.92, in prosecuting this case up to and including December 31, 1954.

35. Defendants' conduct was responsible for this litigation and the resulting litigation expenses and attorney's fees incurred by plaintiffs; and the sum of $5,000 is fixed as reasonable counsel fees in this litigation.

## Conclusions of Law

1. This Court has jurisdiction of the parties and of the subject matter.

2. "Singer" and a letter "S" are good and valid trade-marks and trade-names for sewing machines, furniture, sewing supplies and services, including instruction in sewing, and are the exclusive property of plaintiff, The Singer Manufacturing Company.

3. "Singer Sewing Center" is a good and valid trade-name and the exclusive property of The Singer Manufacturing Company.

4. The defendants jointly and severally are guilty of trade-mark infringement and unfair competition.

5. Plaintiffs are entitled to recover their legal expenses and disbursements as compensatory damages because the defendants' unconscionable conduct was responsible for this litigation which has put plaintiffs to considerable expense by way of attorney's fees and otherwise.

6. Plaintiffs are entitled to a perpetual injunction enjoining and restraining the defendants and each of them, and their officers, agents, servants, employees, attorneys, successors, assigns and those in active concert or participation with them:

(a) From conducting any business, whether as a corporation or otherwise, under the name "Singer Upholstering and Sewing Company," or under any other name or style which includes the name "Singer" or any name confusingly similar thereto.

(b) From making any use whatsoever of the word "Singer," or any word confusingly similar thereto, in connection with the conduct of any business.

(c) From making any use whatsoever of a prominent letter "S" in connection with the conduct of any business.

(d) From directly or indirectly using in any way whatsoever the word "Singer" or prominent letter "S" in any manner intended or calculated to indicate, or having the effect of indicating, that they, the said defendants, have any connection

with the business of plaintiffs, or either of them, and from representing in any manner, by statements, advertising, conduct or otherwise, that the business of defendants has any connection whatsoever with the business of plaintiffs, or either of them.

7. Within thirty days from the entry of the Final Judgment, defendants shall (a) effect a change in the name of the corporate defendant so as to make no use of the word "Singer" or any word confusingly similar thereto, and (b) shall notify the telephone company of the discontinuance of the present corporate name.

8. The amount to be recovered by plaintiffs by way of attorneys' fees and expenses is fixed at $5,000 for attorneys' fees, and $2,783.92 for expenses.

9. Plaintiffs are entitled to recover the costs of this suit.