**PEPSI-COLA COMPANY, Plaintiff,**

v.

**DR. PEPPER COMPANY, Defendant.**

Civ. A. No. 62-865.

United States District Court
W. D. Pennsylvania.
Feb. 7, 1963.

378

Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for plaintiff.

Webb, Mackey & Burden, Pittsburgh, Pa., for defendant.

WILLSON, District Judge.

Pepsi-Cola Company, the plaintiff, filed a complaint in this court on November 5, 1962. The complaint alleged that the action was brought under:

"* * * Sections 32–37, inclusive, and 39, of the Trademark Act of July 5, 1946, as amended (15 U.S.C. Sections 1114–1119, and 1121), and Sections 1338 and 1391 of the Judicial Code (28 U.S.C. Sections 1338 and 1391)."

Plaintiff is a corporation organized under the laws of the State of Delaware but having its principal place of business and executive offices in New York, New York. Defendant is a corporation organized under the laws of the State of Colorado and having its principal place of business and executive offices in Dallas, Texas. It is authorized to and does business in the State of Pennsylvania. It has a registered office in Pittsburgh. The Pittsburgh address on its certificate filed with the Secretary of the Commonwealth is "Oliver Building, Mellon Square, c/o C T Corporation System, Pittsburgh 22".

Plaintiff is the registered proprietor of trademarks "PEPSI-COLA", "PEPSI" and "PEP-KOLA". Defendant has registered the trademark "PEP". Both parties manufacture and distribute syrups for soft drinks. Plaintiff says that vast quantities of beverages and syrups bearing plaintiff's aforesaid trademarks have been sold over the years throughout the United States as well as in a number of foreign countries. Defendant likewise does a nationwide business except for two states, Vermont and New Hampshire. Dr. Pepper is primarily southern in origin but in recent years has been expanded nationwide.

The filing of the complaint on November 5th, last, was the forerunner of several motions in this court and lead to the filing in Dallas of a declaratory judgment suit brought by defendant against plaintiff in the United States District Court there. In this court plaintiff was confronted by two motions by defendant to set aside service of process. Plaintiff's third service was conceded by defendant to be valid so that defendant admits that on January 11, 1963, this court had jurisdiction over the subject matter of this law suit as well as the person of defendant corporation. Plaintiff on the other hand contends that a service upon defendant made at the Pittsburgh registered office by the United States Marshal is good and that the two subsequent services were no more than surplusage.

It should be observed that before defendant had filed any motions, plaintiff, on November 27, 1962, served a notice of the taking of depositions upon defendant's counsel. Under the notice defendant's President and its nine Vice Presidents would be required to come to Pittsburgh for depositions to be taken at plaintiff's counsel's law office. The filing of the deposition notice precipitated counter-measures by defendant's attorney, i. e. the Texas action was filed December 7, 1962, and on the same date a motion was filed in this court for a protective order on the notice for taking depositions. On December 11, 1962, de-fendant filed a motion to dismiss the process served November 7, 1962. In the meantime Judge Sorg of this court issued a temporary restraining order enjoining defendant from prosecuting the Texas action. On December 20, 1962, defendant filed the instant motion for a change of venue. Defendant later filed an amendment to that motion and on January 11, 1963, defendant filed a second motion to dismiss as improper the service obtained December 13, 1962. The case is presently pending before me on all motions.

Preliminarily this court will pass upon the issue as to improper service raised in two motions by defendant. As I see it, counsel have overlooked two or three fundamental things. The first is that Rule 3 of the Federal Rules of Civil Procedure flatly states that a civil action is commenced by filing a complaint with the court. As Judge Picard said in Schram v. Koppin, 35 F.Supp. 313 (E.D. Michigan, S.D.1940), soon after the rules were adopted:

"* * * There is no provision within which time service must be made."

He goes on to say that when an issue is raised regarding the time in which a service is to be made, it is a question of due diligence which in turn is to be decided by the court. This issue seems to me to be finally ruled upon in Barber-Greene Company v. Blaw-Knox Company, 239 F.2d 774, (6 Cir., 1957), where Judge Stewart said at p. 778,

"* * * in both *in rem* and *in personam* actions, jurisdiction relates back to the filing of the complaint."

(Citing cases.)

Under the instant factual situation relating to service of process, I conclude that plaintiff was diligent when defendant raised the possibility that process was improperly served. Defendant conceding that at least by January 11, 1963, the service was good, I hold that this civil action was properly commenced on November 5, 1962.

As the several motions were pending before me, the Clerk did, in accordance with the regular routine of the division of business among the judges of this court, assign this case to me for final disposition.

## MOTION FOR CHANGE OF VENUE

■ This motion is, of course, filed under 28 U.S.C.A. § 1404(a) which provides:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

This being a civil action based upon the trademark laws of the United States, it is therefore apparent that it is one of a nature contemplated by the statute and is transferable under appropriate circumstances. I find the motion timely made. Defendant's motion is that this case be transferred to the United States District Court for the Northern District of Texas, Dallas Division. There is no dispute but what this civil action might have been brought in the Northern District of Texas in the first instance. It is obvious that defendant is amenable to service in Dallas. As mentioned, its executive offices are situate there and its corporate officers not only work there but live there.

The motion came on for hearing, at which time plaintiff submitted affidavits. Defendant produced a witness, Ernest F. Marmon, one of its Vice Presidents, as well as the affidavits. However, having due regard to the matters contained in the testimony and in the affidavits, there is no great issue of fact to be resolved in giving consideration to the motion. Plaintiff corporation is the third largest soft drink company in the country, being exceeded in 1961 sales only by Coca-Cola Company and the Canada Dry Corporation. Plaintiff's sales in that year amounted to nearly 174 Million Dollars. Whereas, defendant, the fifth largest, had just under 15 Million Dollars in sales. Plaintiff concedes that its executive officers and principal office are in the City of New York and that it does business in every state. Defendant says that by filing the action in Pittsburgh, plaintiff has demonstrated its intention to harass the defendant. Counsel says that plaintiff was, of course, aware of the defendant's principal place of business in Dallas, but, nevertheless, chose a forum inconvenient to itself as well as to the defendant. In support of this proposition counsel calls attention to the fact that plaintiff's counsel, on November 27th, noticed the defendant's attorneys that the plaintiff was to take the oral depositions of ten of defendant's corporate officers in Pittsburgh on December 11th and said depositions were to continue from day to day until completed. Defendant says that it is quite obvious that the request was intended to disrupt and irrevocably damage the business affairs of the defendant corporation. In this connection I notice that the ten who were to be deposed in Pittsburgh are all the officers of the defendant except the Assistant Secretary and Controller. In my view the controlling principles on this problem can no better be stated than they were by the late Judge Murphy of the Middle District of Pennsylvania, Brown v. Woodring, 174 F.Supp. 640 (M.D. Pennsylvania, 1959) at p. 645 where he says:

"The controlling conveniences and justice factors are to be applied to both litigants in their relationship to each of the two forums. Balances of these items are struck and then compared before the court's decision is crystallized. Plaintiff will not be sent to a forum which in the court's opinion does not assure him a fair trial. The privilege of selecting a forum continues to play a part in deciding transfer motions but it should not be cast in the leading role. The ultimate inquiry is where trial will best serve the convenience of the parties, the witnesses and the ends of justice; to find that forum in which inconveniences of all parties and witnesses may be at an irreducible minimum.

"Important considerations from the standpoint of litigants are relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling witnesses, cost of obtaining attendance of willing witnesses, possibility of a view, if that be appropriate, and all other practical problems that make trial of a case easy, expeditious and inexpensive." (Citing cases.)

In resolving this problem the court has examined many decisions, including, of course, those cited in the brief and, particularly, Ex parte Collett, 337 U.S. 55, 69 S.Ct. 944, 93 L.Ed. 1207 (1949), and All States Freight v. Modarelli, 196 F.2d 1010 (3 Cir., 1952). Also the decision of Judge Marsh of this court in Goodman v. Columbia Steel and Shafting Company, 171 F.Supp. 718 (W.D.Pennsylvania, 1959), and Swindell-Dressler Corporation v. Dumbauld, 308 F.2d 267 (3 Cir., 1962) and United Transit Company v. United States, 158 F.Supp. 856 (M.D. Tennessee, M.D.1957), and other decisions.

As Judge Herlands said in United States v. General Motors, 183 F.Supp. 858 (S.D.New York, 1960), a motion under Section 1404(a), as here, is usually brought soon after a complaint is filed.

"At that time, the parties generally do not have definitive knowledge of the principal issues, the lines of proof, the names of all witnesses, and the probable duration of the trial. Good-faith estimates and informed judgment must, to some extent, be utilized. The relative advantages and obstacles to a fair, speedy and economical trial * * * must be evaluated in order to discern whether the movant has carried its burden of demonstrating that the balance of convenience and justice weighs heavily in its favor.

"The principal desiderata are: relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; cost of obtaining attendance of witnesses; possibility of a view, if appropriate; and all other practical problems that would make the trial of a case easy, expeditious and inexpensive. In appraising the factors of public interest, it is also appropriate to give some consideration to the relative state of trial calendar congestion in the districts involved.

"Defendant's convenience must be viewed in light of not only the degree to which its business will be disrupted by trial in one forum rather than another, but also its cost of transporting to a city other than their origin (and maintaining therein) people, files, and objects. According to its affidavits, defendant will rely almost entirely on the testimony of a number of important Euclid executives, and on data, documents, records, drawings and demonstrative evidence located at the Euclid Division plants and offices in and around Cleveland." Id., pp. 860 & 861.

■ Having the principles in mind, a discussion of the probabilities as to the proof and the witnesses to be called in this case is appropriate. Generally speaking a trademark infringement case involves, in the first instance, a rather comprehensive examination of the alleged infringers advertising and marketing methods. This case is, of course, nonjury. This court recalls the trial of a case, The Singer Manufacturing Company v. Singer Upholstering & Sewing Company, Inc., D.C., 130 F.Supp. 205, which was tried before me and in which a decision was very quickly reached based upon the infringers newspaper advertising that the Singer Sewing Machine name was appropriated and its trademark infringed. Having made that finding, the issue then turned to the question of damages. It seems to this court that in most trademark cases the plaintiff's evidence will come from the files and business records and the general operations of the defendant itself. This, of course, is not to overlook a fundamental

**382**

requirement under the statute that confusion or mistake or deception as to the source or origin of the goods in the minds of the consuming public must be shown. As to the former, the records of the defendant are unquestionably in Texas. As to the latter, it now appears that witnesses will be called from various parts of the country.

■ As is required under the statute, where is the convenience of the parties and witnesses in this case? Is it Pittsburgh or is it Dallas? In the first place, I have not overlooked the privilege that the plaintiff has in selecting a forum. That privilege, as Judge Murphy said, continues to play a part in deciding transfer motions. But it should not be cast in the leading role. Plaintiff has chosen to leave its own "home grounds" so to speak. It might have gone on to Dallas, but stopped at Pittsburgh. When inquiry was made at the first time I heard this case as to why Pittsburgh was selected, counsel for plaintiff said, "It is neutral ground." However, neutral ground plays no part in the decision unless it can be said that the interest of justice requires that the case be tried not in the state where either of the parties has its principal place of business. I take it that each party will receive a fair trial before any United States District Court. If the case were tried in Pittsburgh any business records which plaintiff would introduce from its main office would have to be transported here. It is the same for defendant. So far as the parties executive officers who may be witnesses are concerned, they must come to Pittsburgh either from New York or Dallas if the case stays here. Scheduled jet airtime from New York to Dallas is around two and one-half hours. It is one hour from New York to Pittsburgh. If plaintiff's witnesses are to leave New York, why not overfly Pittsburgh and continue on to Dallas and take their records with them. In plaintiff's brief it lays considerable stress on the bottlers of each of the parties who are in business in Pennsylvania and who might be called

as witnesses. This matter is somewhat confusing as the court does not quite see, at this point, the importance of very much testimony by the franchised bottlers of either party. If it is important, then it appears from Mr. Marmon's testimony that plaintiff has more bottlers in Texas than in Pennsylvania, and certainly defendant has many more. In 1962, defendant had a little more than one-fourth of one percent of its total sales in Pennsylvania. It has eight or nine bottlers here. Pepsi-Cola has twenty-eight bottlers in Texas and eighteen in Pennsylvania, as well as one of its four or five regional offices in Texas. It seems to me that plaintiff has carefully refrained from indicating the relationship between its Pennsylvania activities and its Texas activities in supplying factual information on which this decision is to be based. I understand, from defendant's witness, that the State of Texas has the largest per capita consumption of soft drinks of any place in the world, that is, 222 bottles per person per year, and that Texas is also the largest soft drink consuming state for all the companies in the business, with New York second. Any relationship to any possible confusion and deception in the minds of purchasers is available in Texas and is not as readily available in Pennsylvania, one reason being the disproportion of relationship in Pepsi-Cola and Dr. Pepper sales in this state. I have not overlooked plaintiff's contention that it is interested in Pep-Kola, only in the north eastern section of the country but as I see it now, the case will no doubt turn on defendant's use of the word "Pep". Plaintiff stresses this use in its affidavit, particularly in connection with the use of that word on defendant's cartons or boxes.

Assuming arguendo that plaintiff makes out a case of infringement and is entitled to damages, then defendant's business records on its volume and profits becomes relevant and perhaps persuasive as the dominant consideration in fixing the amount of the award to plaintiff. ·

Certainly this information is available in Texas and no doubt only there.

█ As Judge Leahy said in Paragon-Revolute Corp. v. C. F. Pease Co., 120 F. Supp. 488 (D.Delaware, 1954), the transfer of this case to Dallas will eliminate one party's travel and that in itself is rather persuasive considering that plaintiff must travel in any event and has chosen to do so. Distances in this age of jet air travel, insofar as executives of large corporations are concerned, are no problem. In reaching this decision, I have given no consideration whatsoever to the filing of the law suit in Dallas by the defendant on December 7, 1962. I have directed my view of the matter to the statute and to the controlling decisions. I have, however, given some weight to the fact that almost immediately after the case was started plaintiff sought to bring ten of the defendant's corporate officers to Pittsburgh for depositions. In my view that deposition notice brought these issues sharply into focus. Defendant says it was done to vex and harass it. I believe what the late Justice Jackson said in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055, 1947, is still appropriate and that is that a plaintiff may not by choice of an inconvenient forum, "vex", "harass," or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. The deposition notice was squarely within the condemned language of Justice Jackson. Plaintiff might well have gone to Dallas or arranged with defendant's counsel to take depositions at a time convenient to both of them.

And finally, in giving proper consideration and weight to all of the factors, the balance is in favor of the Dallas forum. It appears from the evidence and what counsel say that the case can be reached in Dallas as soon as it can be tried in Pittsburgh. From my present view of the probable sources of proof and the witnesses to be called, the convenience favors Dallas. I conclude that the interest of justice likewise favors Dallas. A transfer order will be entered.