FLEISCHMANN DISTILLING CORP. ET AL. *v.*
MAIER BREWING CO. ET AL.

No. 214.   Argued February 14, 1967.—Decided May 8, 1967.

*Moses Lasky* argued the cause and filed briefs for petitioners.

*J. Albert Hutchinson* argued the cause and filed a brief for respondents.

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

This is a trademark case arising under the Lanham Act (60 Stat. 427, 15 U. S. C. §§ 1051–1127) in which our sole concern is with the relief that may be granted when deliberate infringement of a valid trademark has been established. The question is whether federal courts have power in that context to award reasonable attorney's fees as a separate element of recovery in light of § 35 of

the Act which enumerates the available compensatory remedies.[1]

The scope of petitioners'[2] trademark and the fact of respondents'[3] infringement were determined by the Court of Appeals for the Ninth Circuit at an earlier stage of this litigation. 314 F. 2d 149, cert. denied, 374 U. S. 830 (1963). The case was then remanded to the District Court for the Southern District of California which, after noting that the Court of Appeals had characterized respondents' infringing activities as deliberate, entered its own finding to that effect. In accord with prior rulings of certain courts of appeals[4] and district

[1] Section 35 of the Lanham Act, 15 U. S. C. § 1117:

"When a violation of any right of the registrant of a mark registered in the Patent Office shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. . . . In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of 'the above circumstances shall constitute compensation and not a penalty."

[2] The Fleischmann Distilling Corporation owns the American distribution rights to Scotch whiskey sold under the trademark "Black & White." Its co-petitioner is James Buchanan & Co., Ltd., owner and registrant of the trademark.

[3] Maier Brewing Company, the principal respondent, is an independent brewery which marketed a beer under the label "Black & White" through its co-respondent, Ralphs Grocery Company.

[4] E. g., Baker v. Simmons Co., 325 F. 2d 580 (C. A. 1st Cir. 1963); Wolfe v. National Lead Co., 272 F. 2d 867 (C. A. 9th Cir. 1959); Keller Products v. Rubber Linings Corp., 213 F. 2d 382 (C. A. 7th Cir. 1954); Century Distilling Co. v. Continental Distilling

courts [5] that attorney's fees could be recovered if deliberate or willful infringement were established, the District Court awarded petitioners $60,000 after determining that such sum constituted reasonable attorney's fees for prosecution of this litigation. Respondents sought an immediate interlocutory appeal although petitioners' rights to an accounting and other relief remained for determination. The Court of Appeals first dismissed the appeal as premature, but after the District Court issued a certificate under 28 U. S. C. § 1292 (b) [6] authorization was granted. Sitting *en banc* the Court of Appeals reversed the award of attorney's fees, holding that under the Lanham Act federal courts are without power to make such awards. 359 F. 2d 156 (1966). We granted certiorari to resolve the conflict between that holding and the prior decisions of federal courts upon which the

---

*Corp.*, 205 F. 2d 140 (C. A. 3d Cir. 1953); *Admiral Corp.* v. *Penco, Inc.*, 203 F. 2d 517 (C. A. 2d Cir. 1953). As the Court of Appeals in this case pointed out, the decisions upholding awards of attorney's fees under the Lanham Act in most instances merely state the conclusion that attorney's fees are recoverable and cite prior case authority, often commencing with a pre-Lanham Act decision— *Aladdin Mfg. Co.* v. *Mantle Lamp Co.*, 116 F. 2d 708. (C. A. 7th Cir. 1941).

[5] *E. g., Youthform Co.* v. *R. H. Macy & Co.*, 153 F. Supp. 87 (D. C. N. D. Ga. 1957); *Williamson-Dickie Mfg. Co.* v. *Davis Mfg. Co.*, 149 F. Supp. 852 (D. C. E. D. Pa. 1957); *Francis H. Leggett & Co.* v. *Premier Packing Co.*, 140 F. Supp. 328 (D. C. Mass. 1956); *Singer Mfg. Co.* v. *Singer Upholstering & Sewing Co.*, 130 F. Supp. 205 (D. C. W. D. Pa. 1955).

[6] "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order . . . ."

District Court had relied. 385 U. S. 809 (1966). For the reasons elaborated below, we affirm.

As early as 1278, the courts of England were authorized to award counsel fees to successful plaintiffs in litigation.[7] Similarly, since 1607 English courts have been empowered to award counsel fees to defendants in all actions where such awards might be made to plaintiffs.[8] Rules governing administration of these and related provisions have developed over the years. It is now customary in England, after litigation of substantive claims has terminated, to conduct separate hearings before special "taxing Masters" in order to determine the appropriateness and the size of an award of counsel fees. To prevent the ancillary proceedings from becoming unduly protracted and burdensome, fees which may be included in an award are usually prescribed, even including the amounts that may be recovered for letters drafted on behalf of a client.[9]

Although some American commentators have urged adoption of the English practice in this country,[10] our courts have generally resisted any movement in that direction. The rule here has long been that attorney's fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor. This Court first announced that rule in *Arcambel* v. *Wiseman*,

---

[7] Statute of Gloucester, 1278, 6 Edw. 1, c. 1. This statute, which expressly mentioned only "the costs of his writ purchased," was from the outset liberally construed to encompass all legal costs of suit, including counsel fees. Goodhart, Costs, 38 Yale L. J. 849, 852 (1929).

[8] Statute of Westminster, 1607, 4 Jac. 1, c. 3.

[9] See generally McCormick, Damages § 60 (1935); Goodhart, Costs, 38 Yale L. J. 849–872 (1929) (*passim*).

[10] Ehrenzweig, Reimbursement of Counsel Fees and the Great Society, 54 Calif. L. Rev. 792 (1966); McCormick, Counsel Fees and Other Expenses of Litigation as an Element of Damages, 15 Minn. L. Rev. 619 (1931); Stoebuck, Counsel Fees Included in Costs: A Logical Development, 38 Colo. L. Rev. 202 (1966); Note, 65 Mich. L. Rev. 593 (1967).

3 Dall. 306 (1796), and adhered to it in later decisions. See, *e. g., Hauenstein* v. *Lynham,* 100 U. S. 483 (1880); *Stewart* v. *Sonneborn,* 98 U. S. 187 (1879); *Oelrichs* v. *Spain,* 15 Wall. 211 (1872); *Day* v. *Woodworth,* 13 How. 363 (1852). In support of the American rule, it has been argued that since litigation is at best uncertain one should not be penalized for merely defending or prosecuting a lawsuit, and that the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents' counsel. Cf. *Farmer* v. *Arabian American Oil Co.,* 379 U. S. 227, at 235 (1964); *id.,* at 236–239 (concurring opinion of Mr. Justice Goldberg). Also, the time, expense, and difficulties of proof inherent in litigating the question of what constitutes reasonable attorney's fees would pose substantial burdens for judicial administration. *Oelrichs* v. *Spain, supra,* at 231.

Limited exceptions to the American rule have, of course, developed.[11] They have been sanctioned by this Court when overriding considerations of justice seemed to compel such a result. In appropriate circumstances, we have held, an admiralty plaintiff may be awarded counsel fees as an item of compensatory damages (not as a separate cost to be taxed). *Vaughan* v. *Atkinson,* 369 U. S. 527 (1962). And in a civil contempt action occasioned by willful disobedience of a court order an award of attorney's fees may be authorized as part of the fine to be levied on the defendant. *Toledo Scale Co.* v. *Computing Scale Co.,* 261 U. S. 399, 426–428 (1923). The case upon which petitioners here place their principal reliance—

---

[11] 28 U. S. C. § 1923 (a), which is derived from the Fee Bill of 1853, 10 Stat. 161, might be termed a "general exception." It provides for recovery of nominal sums known as "Attorney's and proctor's docket fees." In ordinary litigation and "on trial or final hearing" the sum recoverable under this provision is $20, to be taxed as part of the costs defined by 28 U. S. C. § 1920.

*Sprague* v. *Ticonic National Bank,* 307 U. S. 161 (1939)—involved yet another exception. That exception had previously been applied in cases where a plaintiff traced or created a common fund for the benefit of others as well as himself. *Central Railroad & Banking Co.* v. *Pettus,* 113 U. S. 116 (1885); *Trustees* v. *Greenough,* 105 U. S. 527 (1882). In that situation to have allowed the others to obtain full benefit from the plaintiff's efforts without requiring contribution or charging the common fund for attorney's fees would have been to enrich the others unjustly at the expense of the plaintiff. *Sprague* itself involved a variation of the common-fund situation where, although the plaintiff had not in a technical sense sued for the benefit of others or to create a common fund, the *stare decisis* effect of the judgment obtained by the plaintiff established as a matter of law the right of a discernible class of persons to collect upon similar claims. The Court held that the general equity power "to do equity in a particular situation" supported an award of attorney's fees under such circumstances for the same reasons that underlay the common-fund decisions.

The recognized exceptions to the general rule were not, however, developed in the context of statutory causes of action for which the legislature had prescribed intricate remedies. Trademark actions under the Lanham Act do occur in such a setting. For, in the Lanham Act, Congress meticulously detailed the remedies available to a plaintiff who proves that his valid trademark has been infringed. It provided not only for injunctive relief,[12] but also for compensatory recovery measured by the profits that accrued to the defendant by virtue of his infringement, the costs of the action, and damages which may be trebled in appropriate circumstances.[13] Peti-

---

[12] Section 34 of the Lanham Act, 60 Stat. 439, 15 U. S. C. § 1116.
[13] Section 35 of the Lanham Act, 60 Stat. 439, 15 U. S. C. § 1117 (quoted, *supra,* n. 1).

tioners have advanced the proposition that the authority to award "costs of the action" taken together with the introductory phrase "subject to the principles of equity" should be deemed implicit authority for an award of attorney's fees in light of the reference in *Sprague* to the general equity power. But none of the considerations which supported the exception recognized in *Sprague* are present here. Moreover, since, with the exception of the docket fee provided by 28 U. S. C. § 1923 (a),[14] the statutory definition of the term "costs" does not include attorney's fees,[15] acceptance of petitioners' argument would require us to ascribe to Congress a purpose to vary the meaning of that term without either statutory language or legislative history to support the unusual construction. When a cause of action has been created by a statute which expressly provides the remedies for vindication of the cause, other remedies should not readily be implied. *Philp* v. *Nock,* 17 Wall. 460 (1873); *Teese* v. *Huntingdon,* 23 How. 2 (1860); cf. *Day* v. *Woodworth,* 13 How. 363 (1852). Congress has overturned the specific consequence of *Philp* and *Teese* by expressly allowing recovery of attorney's fees in patent cases [16] and has selectively provided a similar

---

[14] See n. 11, *supra.*

[15] 28 U. S. C. § 1920 provides:

"A judge or clerk of any court of the United States may tax as costs the following:

"(1) Fees of the clerk and marshal;

"(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

"(3) Fees and disbursements for printing and witnesses;

"(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

"(5) Docket fees under section 1923 of this title.

"A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree."

[16] 35 U. S. C. § 285. This provision was enacted in 1946, as was the Lanham Act. 60 Stat. 778. It was revised in 1952, so as to limit such recovery to "exceptional cases." 66 Stat. 813.

remedy in connection with various other statutory causes of action.[17] But several attempts to introduce such a provision into the Lanham Act have failed of enactment.[18] We therefore must conclude that Congress intended § 35 of the Lanham Act to mark the boundaries of the power to award monetary relief in cases arising under the Act. A judicially created compensatory remedy in addition to the express statutory remedies is inappropriate in this context.

*Affirmed.*

MR. JUSTICE STEWART, dissenting.

Until this case, every federal court that has faced the issue has upheld judicial power to award counsel fees in trademark infringement cases.[1] In order to overrule that

---

[17] See, *e. g.*, Clayton Act, § 4, 38 Stat. 731, 15 U. S. C. § 15; Communications Act of 1934, § 206, 48 Stat. 1072, 47 U. S. C. § 206; Copyright Act, 17 U. S. C. § 116; Fair Labor Standards Act, § 16 (b), 52 Stat. 1069, 29 U. S. C. § 216 (b); Interstate Commerce Act, § 16, 34 Stat. 590, 49 U. S. C. § 16 (2); Packers and Stockyards Act, § 309 (f), 42 Stat. 166, 7 U. S. C. § 210 (f); Perishable Agricultural Commodities Act, § 7 (b), 46 Stat. 535, 7 U. S. C. § 499g (b); Railway Labor Act, § 3 First (p), 48 Stat. 1192, 45 U. S. C. § 153 First (p); Securities Act of 1933, § 11 (e), 48 Stat. 907, 15 U. S. C. § 77k (e); Securities Exchange Act of 1934, §§ 9 (e), 18 (a), 48 Stat. 890, 897, 15 U. S. C. §§ 78i (e), 78r (a); Servicemen's Readjustment Act, 38 U. S. C. § 1822 (b); Trust Indenture Act, § 323 (a), 53 Stat. 1176, 15 U. S. C. § 77www (a). See also Fed. Rules Civ. Proc. 37 (a) and 56 (g).

[18] S. 2540, 83d Cong., 1st Sess., § 25 (1953), containing a provision for recovery of attorney's fees, passed the Senate but failed of enactment in the House of Representatives. The Report accompanying the bill stated that the provision was intended to parallel the then recent addition to the patent statute. (See n. 16, *supra*.) A similar provision was embodied in H. R. 7734, 84th Cong., 1st Sess., § 25 (1955), which also died after passing the originating House.

[1] Footnotes 4 and 5 of the Court's opinion, *ante*, pp. 715–716, set out the copious authority supporting the power in trademark litigation to award counsel fees in appropriate circumstances.

unbroken line of authority, I would have to be satisfied that Congress has clearly declared that counsel fees may not be awarded. The Court's opinion does not convince me that Congress has made any such declaration.[2]

It is not enough to say that Congress did not expressly provide for counsel fees in the original Lanham Act and has not subsequently amended the Act to authorize their allowance. There are many reasons for rejecting that kind of approach to statutory interpretation in this case. The Court acknowledges that a pre-Lanham Act decision—*Aladdin Mfg. Co.* v. *Mantle Lamp Co.*, 116 F. 2d 708 (C. A. 7th Cir.)—held counsel fees were recoverable in a trademark action.[3] It seems to me reasonable to assume that when Congress in the Lanham Act empowered courts to grant relief "subject to the principles of equity" [4] it was aware of the *Aladdin* decision and intended to preserve the rule of that case. Other provisions of the statute support this view of the underlying congressional intent. For example, the Act provides:

> "If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." [5]

Allowing the court to consider the "circumstances of the case" to arrive at the amount of the judgment for the plaintiff hardly comports with the Court's view that Congress rigidly limited the scope of remedies available

---

[2] This case does not involve the "adoption of the English practice in this country," but simply whether the established American practice of awarding counsel fees in appropriate *trademark* cases is to be repudiated.

[3] See, *ante*, pp. 715–716, n. 4.

[4] Section 35 of the Lanham Act, 60 Stat. 439, 15 U. S. C. § 1117.

[5] *Ibid.*

in trademark litigation. I cannot say, in view of these provisions, that Congress intended *sub silentio* to over-rule the *Aladdin* case.[6]

The argument that Congress has declined to amend the Act to provide explicitly for counsel fees is hardly determinative. For Congress can be assumed to have known that the federal courts were consistently exer-cising the power to award counsel fees after the Act's passage. The failure to amend the statute to do away with this judicial power speaks as loudly for its recog-nition as the failure to pass the bills referred to by the Court speaks for the contrary conclusion.

I respectfully dissent.

---

[6] This was the reasoning of the District Court in *A. Smith Bow-man Distillery, Inc.* v. *Schenley Distillers, Inc.*, 204 F. Supp. 374, 377:

"Mere silence and inaction by Congress cannot be held to have repealed what has been found to be a well-established judicial power. Even though the Lanham Act may have been intended to be an integrated and comprehensive set of rules for trademark regulation and litigation to the exclusion of all conflicting rules, the retention of discretionary judicial power over the fixing of costs does not seem such a threat of inconsistency that it should by implication be held pre-empted or repealed by the Act. Some more positive action on the part of the legislature is necessary to indicate the Congressional intent to regulate what has long been an orthodox judicial function." (Footnote omitted.)