Doris **FISCHMAN**, as Executrix of the Estate of Louis H. O. Fischman, Deceased, Plaintiff,

v.

Jerrold **WEXLER** et al., Defendants.

Civ. A. No. 3053.

United States District Court, D. Delaware.

Feb. 13, 1970.

Irving Morris, of Cohen, Morris & Rosenthal, Wilmington, Del., and Milton Paulson, New York City, of counsel, for plaintiff.

H. Albert Young, of Young, Conaway, Stargatt & Taylor, Wilmington, Del., Howard R. Koven and Sheldon O. Collen, of Friedman, Koven, Salzman, Koenigsberg, Specks & Homer, Chicago, Ill., of counsel, for Jerrold Wexler, Edward W. Ross, Howard R. Koven, Bernard H. Barnett, Philip Rootberg, G. Burton Liese, R. G. Rice, and The Jupiter Corporation.

Januar D. Bove, Jr., of Connolly, Bove & Lodge, Wilmington, Del., for Elgin Gas & Oil Co.

## MEMORANDUM OPINION

CALEB M. WRIGHT, Chief Judge.

This is a minority stockholders derivative suit. The parties have petitioned the Court to review and approve a proposed settlement and to award fees.

The plaintiff is the Executrix of the Estate of the owner of shares of the common stock of Elgin Gas & Oil Co. (Elgin). The defendant, The Jupiter Corporation (Jupiter) prior to December 4, 1964, was Elgin's largest stockholder, owning approximately 67% of the outstanding stock of Elgin. Elgin and Jupiter were both engaged in the production and sale of oil and gas. The board of directors of Elgin consisted of officers and directors of Jupiter.

Elgin had apparently not been a successful operation and by December, 1964, had an unused net operating loss carryover available under the income tax laws as an offset against future taxable income totalling approximately $4,000,000. On or about December 4, 1964, Elgin issued 2,034,042 shares of its common stock to Jupiter in consideration for the transfer by Jupiter to Elgin of 56 undeveloped mineral leases. This exchange enabled Jupiter to become the

owner of 80% of the outstanding stock of Elgin.

On December 10, 1964, Elgin adopted a plan of complete liquidation and dissolution which provided for the assignment of all assets of Elgin to a liquidating trustee and for the payment by the trustee of all liabilities of Elgin, and the distribution of its remaining assets, if any, to Elgin's shareholders. The plan of liquidation and dissolution of Elgin was approved by the vote of its shareholders at a special meeting held on December 31, 1964. Jupiter had loaned in excess of $500,000 to Elgin at the time of the special meeting and was Elgin's largest creditor. At present the liquidating trustee is about to dispose of the last of Elgin's assets and it is obvious that the stockholders of Elgin will receive nothing since the assets of Elgin are not sufficient to pay its creditors.

The plaintiff alleges that the proxy statement issued prior to the meeting of December 31, 1964, was false and misleading in that it did not disclose that the acquisition of the 2,034,042 shares of the common stock of Elgin was without adequate consideration and was for the sole benefit of Jupiter and not beneficial to Elgin and its shareholders and, further, that it did not disclose that the tax carryover of Elgin was a valuable asset. Thus Jupiter and its directors are alleged to have violated a fiduciary duty owed to Elgin and its minority shareholders as well as § 14 of the Securities and Exchange Act of 1934.

The loss carryover accruing to Jupiter by reason of its acquisition of 80% of the stock ownership of Elgin expired in 1969. During this period, because of its own losses, Jupiter was unable to utilize the loss carryover so that it reaped no benefit from it. In 1967 the plaintiff was informed by Jupiter's attorney that Jupiter was unable to utilize the loss carryover which would expire in 1969. Nothing further was done by the plaintiff, or her attorneys, until December, 1968, at which time the deposition of Philip Rootberg, financial vice president, treasurer and director of Jupiter, was

taken. His deposition disclosed that Jupiter had derived no benefit and would in the future derive no benefit from the loss carryover. This was later confirmed by an examination of the annual reports of Jupiter for the years 1966, 1967 and 1968.

According to plaintiff's counsel, Mr. Paulson, it was clear that Elgin had sustained no damages and that Jupiter had derived no benefit from the transaction alleged as the basis for this action.

The plaintiff's attorneys, however, in an effort to secure a benefit for Elgin and its shareholders decided that it would be of some benefit to the shareholders if Elgin's liquidation were completed and the worthlessness of its stock established. They reasoned that if any of the stockholders of Elgin had capital gains they could more easily prove their losses on the Elgin stock if the corporation were officially declared to be liquidated.

Jupiter agreed to complete liquidation of Elgin and to pay all expenses incident thereto and to pay the attorneys' fees, accountants' fees and expenses of the litigation as determined by the Court, and not to contest any fee allowance by the Court if the award were $35,000 or less.

Stockholders and creditors of Elgin were notified of the proposed settlement and the amount of the intended fee application. On the date set for hearing objections to the settlement no stockholders appeared to oppose the settlement and the Court was informed that no formal or informal objection had been received in the office of the Clerk of the Court or by the appearing attorneys.

The proposed settlement gives this Court some concern. It is conceded that Elgin, the corporation in whose behalf this derivative stockholders suit was commenced, will receive very little, if any, benefit. The identity or number of stockholders of Elgin who will benefit from the liquidation and the legal determination of the worthlessness of Elgin's stock is unknown and the benefit con-

ferred upon those who can or may benefit is problematical. The only easily discernable beneficiaries of this settlement are Jupiter, which is disposing of a lawsuit, and the attorneys who will receive a fee if the settlement is approved.

In Mills v. Electric Auto-Lite Company, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed. 2d 593 (Jan. 20, 1970), the Supreme Court held, inter alia, that an interim award of counsel fees was proper after summary judgment as to liability in a stockholder's derivative suit based on violation of the SEC's proxy rules. The rationale of such an award was expressed by Mr. Justice Harlan as follows:

> "While the general American rule is that attorneys' fees are not ordinarily recoverable as costs, both the courts and Congress have developed exceptions to this rule for situations in which overriding considerations indicate the need for such a recovery. A primary judge-created exception has been to award expenses where a plaintiff has successfully maintained a suit, usually on behalf of a class, that benefits a group of others in the same manner as himself. See Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. at [714] 718–719, 87 S.Ct. [1404] at 1407 [18 L.Ed.2d 475]. To allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense." 396 U.S. 391–392, 90 S.Ct. 616 at 625 (1970) (footnotes omitted).

Justice Harlan went on to elaborate the propriety of awards even when no fund in the strict sense was produced. Then, in concluding, he said:

> "But regardless of the relief granted, private stockholders' actions of this sort 'involve corporate therapeutics,' and furnish a benefit to all shareholders by providing an important means of enforcement of the proxy statute.

> To award attorneys' fees in such a suit to a plaintiff who has succeeded in establishing a cause of action is not to saddle the unsuccessful party with the expenses but to impose them on the class that has benefitted from them and that would have had to pay them had it brought suit." 396 U.S. 396–397, 90 S.Ct. 616 at 628 (footnotes omitted).

Counsel have urged that Mills strongly supports the settlement for which they seek approval. On its facts it is no authority for the settlement urged, and its rationale is not applicable to the principles involved here. In Mills, the interim award of attorneys' fees followed an adjudication of liability, a grant of partial summary judgment. Here there has been no affirmative determination that defendants or any of them violated any of the provisions of the security laws. In Mills, too, the award was to be made against the corporation of which plaintiff was a stockholder. It involved no more than an extension of the salvage theory of derivative and class actions,* removing obstacles to the recovery of fees and costs from the class benefitted by the litigation. Here, it is not the salvage theory which counsel seek to implement. They do not seek to charge plaintiff's corporation for their fees. Indeed, they could not because it is established that the corporation is insolvent.

The arrangement for which they seek approval would exchange dismissal of the lawsuit for an agreement to complete liquidation of Elgin, a process begun before the lawsuit was commenced and which is certainly not without benefit to Jupiter, and consent to an award of counsel fees against Jupiter not in excess of $35,000.

The Court is aware that "corporate therapeutics" are advanced by liberal awards to counsel for the successful prosecution of derivative suits. The contingent fee system assumes, however, as conceded by Mr. Paulson, that unless counsel are successful they may not re-

---

* Hornstein, "The 'Salvage' Factor in Counsel Fee Awards." 69 Harv.L.Rev.658(1956).

ceive any fees at all. He argues forcefully that time is the most irrelevant factor in the measure of fees to be charged against a corporation for whose benefit a successful suit has been prosecuted.

In this case, however, it is difficult to see how, assuming that Elgin were solvent, an award of $35,000 could be justified against Elgin in light of the results achieved. That defendant has agreed to pay it as part of the settlement, which consists of little else, thus gives the Court pause. It puts to counsel the reality that, having concluded that the possibility of ultimate success is remote, and that there will be no substantial benefit, tangible or intangible, to Elgin on which they can base a claim for fees, the only possible source of compensation for their time and talents must come from Jupiter.

The Court hastens to add that it finds no evidence of collusion or lack of arm's length dealing in the record before it. It knows counsel to be highly reputable attorneys and has the utmost confidence in their good faith. It is also clear that any monetary settlement paid to Elgin would revert immediately to Jupiter in satisfaction of its preferred claims for liquidation expenses. No possibility appears of conferring any substantial financial benefit on the Elgin stockholders. Thus the persons whose interests are entrusted to the Court in its perusal of a settlement seem secure in their misfortune from the harmful effects of any overreaching.

Being convinced, therefore, that there are no objections to the proposed settlement and that under present circumstances it works no harm on Elgin or its stockholders, the Court will approve the settlement. The Court does not believe, however, for the reasons stated above, that this is an appropriate case for application of the salvage theory. In considering counsel's application for fees, therefore, no effort has been made to evaluate the benefit, if any, conferred on Elgin or its stockholders. Nor does the Court feel that it should undertake an investigation of the amount of time and effort invested by counsel in the prosecution of the case, for the attorney in chief kept no records of his time, depending entirely on the contingency of success and an award by the Court at the conclusion of the litigation. A reasonable attorney's fee under the circumstances should be based on the beneficial "corporate therapeutics" performed in this case and the need to avoid discouraging counsel from undertaking the risk of derivative suits such as this one, which happens to have run aground. The Court approves an award of $20,000.

So ordered.