## IN THE INTEREST OF: TIMOTHY FANNING
### Case No. C-80-2752-CJ
Fifteenth Judicial Circuit, Palm Beach County
July 24, 1980

State Attorney, for the State.

Richard Rhoads, for Timothy Fanning.

JAMES T. CARLISLE, Acting Circuit Judge.

On April 13, 1980, I appointed Richard Rhoads, Esq., to represent Timothy Fanning, a child in a delinquency case. This was done because the child was indigent and there was a conflict with the Public Defender's Office. Pursuant to that appointment, Mr. Rhoads expended twenty-four and one-half hours in the representation of Mr. Fanning. He submitted an affidavit to that effect, with the affidavit of another attorney that a fair and reasonable fee would be $1,350.00. I entered an Order on June 17, 1980, directing the Board of County Commissioners of Palm Beach County to pay Mr. Rhoads the $1,350.00.

I am now advised that Section 925.036 Florida Statutes provides as follows:

> "Appointed counsel; compensation—An attorney appointed pursuant to s. 925.035 or s. 27.53 shall, at the conclusion of the representation, be compensated at an hourly rate fixed by the chief judge or senior judge of the circuit in an amount not to exceed the prevailing hourly rate for similar representation rendered in the circuit. Such attorney shall be reimbursed for expenses reasonably incurred, including the costs of transcripts authorized by the court. The compensation for representation shall not exceed the following per case per defendant:
>
> (1) For misdemeanors and juveniles represented at the trial level: $500.
>
> (2) For noncapital, nonlife felonies represented at the trial level: $1,500.
>
> (3) For life felonies represented at the trial level: $2,300.
>
> (4) For capital cases represented at the trial level: $2,500.
>
> (5) For representation on appeal: $1,000.

The practice of criminal law has certain drawbacks. While it is by its very nature fascinating, it carries with it a certain opprobrium. The general public often transfers its hatred of an unpopular defendant to the attorney who vigorously defends his rights. The more prestigious law firms simply do not accept criminal cases. I suspect there are some members of the Bar who look down on their brothers who practice in the criminal arena.

The working conditions are not the best. For the most part, the clients are the poor, the ignorant, the disadvantaged, and very literally "the unwashed masses yearning to be free." Rather than having the client come to the office, it is often necessary to meet the client at the jail. Rather than dealing with doctors and accountants and butchers and bakers and candlestick makers, the criminal lawyer must spend

hours ferreting out the truth from people barely acquainted with the English language, incapable of telling a coherent story, and who, by their suspicious natures, are reluctant to discuss anything with appointed counsel, who they regard as another form of policeman.

The lawyer whose waiting room is populated by tatooed bikers, hot-panted prostitutes, winos and others from this milieu finds his more genteel clients taking their custom elsewhere. Finally, the criminal lawyer spends a great deal of his time in jury trials. This is doubtless the more demanding form of advocacy and in the criminal arena a great deal more than just dollars hangs in the balance.

Every attorney admitted to practice takes an oath that:

> "I will never reject, from any consideration personal to myself, the cause of the defenseless or oppressed . . . so help me God."

The Ethical Considerations state as follows:

> "EC 2-29 When a lawyer is appointed by a court or requested by a bar association to undertake representation of a person unable to obtain counsel, whether for financial or other reasons, he should not seek to be excused from undertaking the representation except for compelling reasons. Compelling reasons do not include such factors as the repugnance of the subject matter of the proceeding, the identity or position of a person involved in the case, the belief of the lawyer that the defendant in a criminal proceeding is guilty, or the belief of the lawyer regarding the merits of the civil case."

There were perhaps quieter times when attorneys could occasionally contribute their time to representing indigent defendants without compensation. In *Gant v. State*, (1 DCA 1968) 216 So.2d 44, at 46, we find the following:

> "Attorneys so appointed under this provision of the statute are not entitled as a matter of right to the award and payment of a fee for their services. If in the discretion of the appointing court the payment of a fee is neither warranted nor justified, the services rendered by the appointed attorney must be considered a contribution to the public welfare and the administration of criminal justice in accordance with the finest traditions of the legal profession which have prevailed since time immemorial."

And again at page 47:

"Attorneys rendering services pursuant to appointment by the court as assistant public defenders under section (2) of the above quoted statute should not expect, nor are they entitled as a matter of right to receive compensation in amounts commensurate with that which would normally be paid for similar services emanating from a voluntary-attorney client relationship."

But, like the rain in Spain, this burden falls mainly on those who labor in the criminal vineyard. If a court is to appoint competent counsel, it must restrict its choice to those familiar with the peculiarities of the criminal law. In attempting to spread the burden among those who "do not accept criminal cases", the court risks appointing, rather than a laborer in the vineyard, a trampler of the vintage. In no other area of the law can the entire proceedings be held for naught simply because of a blundering defense counsel.

The reality is that criminal defense lawyers get more than their share of appointments to represent indigent defendants. The reality is that criminal defense lawyers can ill afford to devote too much time and effort to defense where the maximum fee lies somewhere between $500 and $2,500. The reality is that defendants represented by private counsel and the Public Defender will receive far better representation than those represented by court appointed private counsel where the fees are limited by Section 925.036 Florida Statutes.

Neither the Legislature nor the courts have the right to place the defense bar in peonage. As Mr. Justice Erwin stated in his dissent in *Mackenzie v. Hillsborough County*, (Fla. S.Ct. 1973) 288 So.2d 200, at 202:

"I do not believe that good public conscience approves such shoddy, tawdry treatment of an attorney called upon by the courts to represent an indigent defendant in a capital case. Such treatment is out of harmony with the rationale of *Gideon v. Wainwright*, 372 U.S. 334, 83 S.Ct. 792, 9 L.Ed.2d 799, that a reasonable measure of equal legal representation will be afforded indigents similar to that which wealthy clients are able to afford. If it were the rule in Florida that good counsel would be paid commensurate with the value of their services rendered indigent defendants, the spirit of the *Gideon* case and not just the letter would be more honestly and quantitatively served. Were it not for the economic sacrifice of able counsel who are usually inadequately compensated for their services, most of the indigent capital case defendants

would receive short shrift in our courts. Even with this dedication one gets the feel that quite often the failure to adequately compensate counsel results in less than satisfactory indigent representation. The adage that "you get what you pay for" applies not infrequently. In our pecuniary culture the calibre of personal services rendered usually has a corresponding relationship to the compensation provided."

I cannot help believe that the parsimonious attitude reflected in this statute is nothing more than "law and order" posturing on the part of the Legislature. It reflects a desire that indigent defendants get short shrift. It is not only unconstitutional — it is reprehensible. It strikes me that this Statute denies these defendants equal protection of the law and, very likely, the effective representation of counsel. It likewise deprivates the criminal defense lawyer of the equal protection of the law.

There is yet another string for the bow. The courts have the necessary powers to do whatever is necessary in the administration of justice. Courts have the duty to appoint private counsel to represent indigent defendants where there exists a conflict between the defendant and the Public Defender's Office. With the duty goes the power to carry it out. Without question they have the power to command payment of appointed counsel. This power is not subject to legislative fiat. *Batch v. State*, (1 DCA 1958) 101 So.2d 869 at 875. Section 925.036 Florida Statutes is so niggardly as to effectively emasculate courts of this power.

The Statute is therefore unconstitutional as a violation of the separation of powers doctrine.

In *Rose v. Palm Beach County*, (Fla. S.Ct. 1978) 361 So.2d 135, the Florida Supreme Court was confronted with an analogous situation. The venue of a criminal trial was transferred from Palm Beach to Duval County. It was necesary for state and defense witnesses to travel to Jacksonville, Florida. Many of them were indigent. The trial court ordered the county to pay the witnesses $9.25 per day and .10 cents per mile. The Fourth District Court of Appeal quashed the order on the basis of Section 90.14 Florida statutes (1975), which provided witnesses receive $5.00 per day and .06 cents per mile.

In quashing the order of the Fourth District Court of Appeal, the Supreme Court, Mr. Justice Boyd, stated at page 137:

"Every court has inherent power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction, subject to valid existing laws and constitutional provisions. The doctrine of inherent judicial

power as it relates to the practice of compelling the expenditure of funds by the executive and legislative branches of government has developed as a way of responding to inaction or inadequate action that amounts to a threat to the courts' ability to make effective their jurisdiction. The doctrine exists because it is crucial to the survival of the judiciary as an independent, functioning and co-equal branch of government. The invocation of the doctrine is most compelling when the judicial function at issue is the safe-guarding of fundamental rights.''

The Court went on to hold that the limitations of Section 90.24 Florida statutes are advisory only and not an absolute maximum. In an age when private counsel are collecting $1,500.00 fees for a simple driving while impaired plea, it is difficult to be so gentle with Section 925.036 Florida statutes.

In *County of Seminole v. Waddell*, (5 DCA 1980) 382 So.2d 357, it was held that Section 925.036 Florida Statutes was mandatory and not directed only. Neither the Fifth District Court of Appeal nor the trial court passed on the validity of the Statute.

In *Mackenzie, supra,* the Supreme Court, citing *Dade County v. Strauss* (3 DCA 1971) 246 So.2d 137, found Section 925.036 to be constitutional apparently on the theory that:

''The right to recover attorneys' fees as part of the costs in an action did not exist at common law, and therefore it must be provided for by statute or contract.''

The Supreme Court thus departs from the rationale of *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, on the basis of a fallacious bromide. It is often said that the right did not exist at common law. The statement is not historically true no matter how many times courts repeat it. As early as 1278 the Courts of England were authorized to award counsel fees to successful plaintiffs in litigation. The Statute of Gloucester which mentioned only ''costs of his writ purchased'', was liberally construed to encompass all costs, including attorney fees, *Fleisschman v. Maier Brewing Co.*, 386 U.S. 714, 18 L.Ed.2d 475, 87 S.Ct. 1404 at footnote 7.

''Similarily, since 1606 English Courts have been empowered to award counsel fees to defendants in all actions where such awards might be made to plaintiffs. Rules governing administration of these and related provisions have developed over the years. It is now customary in England, after litigation of substantive claims has terminated, to conduct separate hearings before special 'taxing masters' in order to determine

the appropriateness and the size of an award of counsel fees.'' *Alyeska Pipeline Service Company v. The Wolderness Society*, 421 U.S. 420, 44 L.Ed.2d 141 95 S.Ct. 1612.

Mr. Justice Erwin's dissent in *Mackenzie supra* is the more enlightened view, and should be adopted as the law in Florida.

I, therefore, find that Section 925.036 Florida Statutes to the extent that is purports to limit the amount of attorney's fees is unconstitutional as a denial of equal protection, a denial of due process, and a violation of the separation of powers doctrine. The Board of County Commissioners of Palm Beach County is hereby ordered to forthwith cause the fees and expenses allowed by this Court to be paid to Richard Rhoads, Esq., and the said County of Palm Beach shall have a lien enforceable anytime within twenty (20) years from the date of the filing of said order upon the property of the defendant, pursuant to the Rules of Juvenile Procedure.