Timothy MELLON, Plaintiff,

v.

THE CESSNA AIRCRAFT COMPANY, Defendant.

No. 96–1454–JTM.

United States District Court, D. Kansas.

Aug. 9, 1999.

1062

Daniel D. Crabtree, Stinson, Mag & Fizzell, P.C., Leawood, KS, John H. Broadley, David A. Handzo, Steven N. Berk, Thomas D. Amrine, Jenner & Block, Washington, DC, for Plaintiff.

P. John Owen, Morrison & Hecker L.L.P., Kansas City, MO, John C. Nettels, Jr., Morrison & Hecker L.L.P., Wichita, KS, Michael E. Tucci, Morrison & Hecker L.L.P., Washington, DC, for Defendant.

## MEMORANDUM AND ORDER

MARTEN, District Judge.

Two motions are currently pending before the court: (1) Cessna's motion to alter or, alternatively, to amend the judgment; and (2) Mellon's motion for attorney's fees and non-taxable expenses. Both motions are fully briefed. The court advised the parties of its decision previously through a telephone conference. For the reasons stated during that conference and as more fully discussed below, both motions are denied.

### I. Cessna's Motion to Alter or Amend Judgment

■ Pursuant to D. Kan. Rule 7.3(a)[1] and Fed.R.Civ.P. 59(e), Cessna moves the court to alter or amend the judgment rendered on December 2, 1998, and to award Mellon monetary damages, rather than specific performance. It claims $50,000, the amount Mellon's own expert established, would adequately compensate Mellon for its refusal to service his airplane.

---

1. Rule 7.3 of the local rules for the District of Kansas provides a procedural basis for filing a motion to reconsider. However, that rule is intended only to apply to nondispositive judgments and orders. *Williams v. Penske Transp. Servs., Inc.,* No. 97–2470–JWL, 1999 WL 232914, at *1 (D.Kan. Mar. 15, 1999); *see* *also Thiessen v. General Elec. Capital Corp.,* 996 F.Supp. 1071, 1085 n. 1 (D.Kan.1998) ("Although Rule 7.3 of the local rules for the District of Kansas provides a procedural basis for filing a motion to reconsider, this rule is intended to apply only to nondispositive judgments and orders.").

If the court continues to believe specific performance is the appropriate remedy, then Cessna wants the court to identify explicitly the services and inspections Cessna is not obligated to perform under the agreement.

A Rule 59(e) motion may be granted if any of the following three conditions are presented to the court: (1) an intervening change in the controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice. *Brumark Corp. v. Samson Resources Corp.*, 57 F.3d 941, 948 (10th Cir.1995). Motions to alter or amend judgment are "regarded with disfavor and generally granted only if the court has obviously misapprehended a party's position or the facts." *Gorelick v. Department of the Treasury*, No. Civ.A. 97–2545–GTV, 1998 WL 472647, at *1 (D.Kan. July 30, 1998). A Rule 59(e) motion is not "a vehicle for the losing litigant to rehash arguments previously addressed and rejected or to present new legal theories or facts that could have been raised earlier." *Fields v. Atchison, Topeka, and Santa Fe Ry. Co.*, 5 F.Supp.2d 1160, 1161 (D.Kan. 1998). In other words, "[a] party's failure to put forth its best case in the first instance does not entitle it to a second chance in the form of a motion to alter or amend judgment." *Gorelick*, 1998 WL 472647, at *1. The decision whether to grant a motion to alter or amend is within the sound discretion of the trial court. *Brown v. Presbyterian Healthcare Servs.*, 101 F.3d 1324, 1332 (10th Cir.1996).

Cessna states that it is not attempting to relitigate the issue of liability in its motion to alter or amend the judgment. Instead, it argues the court had no principled basis on which to conclude specific performance is the appropriate remedy. Therefore, it is apparently arguing that its motion should be granted in order to correct clear error or prevent manifest injustice. The only evidence, according to Cessna, was Mellon's testimony that he lacks security in his airplane. Cessna does not believe Mellon will actually obtain security from knowing that future repairs and inspections are being performed only to comply with the court's order and not as Cessna's skill and judgment dictate.

Cessna further argues that the court's order overlooks the substantial hardship on Cessna that specific performance will inevitably cause. Specifically, it claims it does not have sufficient information to inspect modified airplanes because inspection criteria for the modifications is not available to Cessna.

In addition, Cessna argues its service is not factually or legally akin to a tract of real estate, as Mellon contends. Instead, it is more in the nature of personal services, and under New York law, specific performance is not available where a contract is for personal services.

Finally, Cessna claims the court's order does not state what Cessna must do, for whom and for how long. It assumes it must perform service for Mellon for as long as he owns the airplane.

Mellon argues that Cessna's refusal to service and inspect his airplane has deprived him of the benefit of his agreement with Cessna. He claims the evidence shows Cessna maintained and inspected his Citation, as well as other Citations with the same modifications, for years before it issued the service letter. He states that Cessna's "safety concerns" stem from two incidents that occurred over the past ten years.

Mellon further contends that Cessna's service centers remain capable of servicing his airplane. As evidence in support of this contention, Mellon states that at least four Cessna employees said they would continue to service the modified Citations had Cessna not issued the service letter. Furthermore, Mellon states that according to Cessna's own service center managers and technicians, Cessna remains capable of safely servicing modified Citations.

Mellon argues that the court's decision to grant specific performance should stand. He claims Cessna has pointed to no factual

or legal errors in the court's judgment. He claims specific performance is the only adequate remedy, because he bargained, specifically, for Cessna factory service. He argues that Cessna's insistence that he presented evidence of monetary injury is irrelevant to the issue of whether specific performance is proper. He states that the most important aspect of his injury is his loss of confidence in the condition of his airplane. Finally, he wants the court to require Cessna to do exactly what it promised: service his airplane as it did before September 1995, excepting only the modifications themselves.

The court finds that the order of December 2, 1998, should stand as its final decision. Altering or amending that order is not warranted in this case. Cessna has failed to show that there has been an intervening change in controlling law or that it has discovered new evidence that could not have been obtained previously. Further, the court finds that altering or amending is not necessary to correct clear error or prevent manifest injustice.

The court finds that the only way to prevent manifest injustice is to let the order of specific performance stand. As previously noted, motions to amend or alter a judgment are generally regarded with disfavor. Nothing in the record before the court suggests that the court has misapprehended Cessna's position or the facts of this case. The facts are quite simple. Mellon bargained specifically for Cessna service before he purchased the modifications to his Citation. Cessna indicated it would continue to service the modified aircraft, with the exception of the modifications themselves. Based on Cessna's promise to continue its service and maintenance, Mellon purchased the modifications and had them installed. Cessna did not state for how long it would continue to service and maintain Mellon's modified airplane. Therefore, Mellon reasonably believed Cessna would continue to service and maintain his airplane for as long as he owned it. Cessna upheld its promise to service and maintain Mellon's

airplane until it issued the service letter in September 1995.

The court rejects Cessna's argument that the contract between the parties was for personal services and, therefore, not subject to specific performance. Cessna's mechanics are licensed by the FAA and trained to service and repair Cessna aircraft. Cessna service is available throughout the country at a number of authorized Cessna service centers. Cessna presumably would not disagree that its own service centers provide better service for Cessna aircraft than non-Cessna service centers. The very availability of Cessna-authorized service at multiple locations distinguishes Cessna's obligation under this contract from a personal services contract between, for example, a performer with a unique style and a promoter or theatre.

Cessna has requested a clarification of its obligations under the contract. The court is not willing to rewrite the contract under the guise of ordering specific performance. The parties themselves know the scope of the contract, *i.e.*, Cessna shall continue to service Mellon's airplane in the same manner it did before it issued the service letter. In other words, whatever service and maintenance Cessna was providing at the time it issued the letter, that is what it is obligated to do.

The court does note that this contract is personal to Mellon. Upon Mellon's sale, transfer or assignment of the aircraft to any other person or entity, the contract terminates.

## II. Mellon's Motion for Attorneys' Fees

Mellon seeks attorney's fees and expenses in connection with the contract claim on which he prevailed. Mellon cites no statutory authority for the court to award fees. Instead, he wants the court to exercise its equitable powers to award fees because he claims Cessna knew even before the commencement of this litigation that it had entered into an enforceable agreement with him. Mellon argues Cess-

na's efforts to defeat his claim have served only to prolong the litigation and increase his legal expenses. Mellon asks the court to bifurcate the issues of his entitlement to fees and the actual amount of fees to which he may be entitled.

Mellon claims he has been forced to fight for the enforcement of a contract that Cessna has acknowledged and then stipulated to in this very proceeding. He claims Cessna's efforts had no basis in law or fact and that he is entitled to compensation for his litigation expenses. Mellon argues that a federal court may award fees when a party has asserted positions without any basis. Based on admissions by Cessna's managers, Mellon claims Cessna's defense—that the agreement was too uncertain or indefinite to be enforceable— was "completely without merit." Pl.'s Mem. at 4.

Cessna claims there is no statutory or contractual basis on which Mellon bases his claim for fees and expenses. It further claims Mellon has failed to produce evidence of bad faith by Cessna or its legal counsel. Cessna argues Mellon is not entitled to attorney's fees under New York law, the law under which he prevailed on his promissory estoppel claim. It contends that New York law does not allow fees unless authorized by statute or specifically provided for in the parties' contract.[2] Cessna further argues Mellon fares no better under federal law, which requires a showing of bad faith before payment of fees will be ordered.

■ "[F]ederal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require." *Hall v. Cole*, 412 U.S. 1, 4–5, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). Typically, however, parties must bear the costs of their own attorney's fees.

[T]he longstanding "American Rule," adopted by the Supreme Court in *Arcambel v. Wiseman*, 3 U.S. (3 Dall.) 306, 1 L.Ed. 613 (1796), generally bars prevailing parties from recovering attorneys' fees in the absence of a statute or enforceable contract providing for such an award. *E.g., Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616–17, 44 L.Ed.2d 141 (1975); *F.D. Rich*, 417 U.S. at 126, 94 S.Ct. at 2163–64. The rationale underlying this rule, which often operates to prevent full compensation to injured parties, is that because "litigation is at best uncertain one should not be penalized for merely defending or prosecuting a lawsuit, and that the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents' counsel." *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967).

*Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 765 (10th Cir.1997).

The Supreme Court has, however, recognized certain exceptions to the American Rule. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). These exceptions fall into three categories. *Id.* "The first, known as the 'common fund exception,' derives not from a court's power to control litigants, but from its historic equity jurisdiction and allows a court to award attorney's fees to a party whose litigation efforts directly benefit others." *Id.* (citations omitted). The second exception allows a court to assess attorney's fees as a sanction for the " 'willful disobedience of a court order.' " *Id.* (quoting *Alyeska*, 421 U.S. at 258, 95 S.Ct. 1612). The third exception allows a court to assess attorney's fees when a party has " 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.' " *Id.* at 45–46, 111 S.Ct. 2123 (quoting *Alyeska*, 421 U.S. at 258–59, 95 S.Ct. 1612). This exception has become known as the "bad-faith" exception to the American Rule.

---

**2.** New York law does, however, recognize the exception to the "American Rule" when a party has acted in bad faith. *See Park South*

*Assocs. v. Essebag*, 126 Misc.2d 994, 487 N.Y.S.2d 252, 253 (1984) (recognizing the bad faith exception to the "American Rule.").

■ This third exception is the only one even remotely arguably applicable in this case. It "derives from the inherent power of the federal courts to sanction conduct that abuses the judicial process." *Towerridge*, 111 F.3d at 765. Therefore, " '[f]ees awarded under the bad-faith exception are punitive in nature, but are designed to punish the abuse of judicial process rather than the original wrong [underlying the action].' " *Id.* at 765–66 (quoting *Shimman v. Int'l Union of Operating Eng'rs*, 744 F.2d 1226, 1232 n. 9 (6th Cir.1984) (en banc), *cert. denied*, 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985)). "Because the origin of the bad-faith exception is the federal judiciary's necessary and inherent power to police proceedings before it," the exception does not reach the bad faith conduct that occurs *outside* the course of the litigation itself. *Id.* " '[T]he imposition of sanctions under the bad-faith exception depends not on which party wins the lawsuit, but on how the parties conduct themselves *during the litigation.*' " *Id.* (citing *Chambers*, 501 U.S. at 53, 54 n. 16, 111 S.Ct. 2123).

According to the Tenth Circuit, there are three forms of bad-faith conduct, one which is not a basis for fee shifting and two which lie within the bad-faith exception to the American Rule. *Id.* at 768. First, bad faith occurring *during the course of litigation* that is abusive of the judicial process undisputably, at the discretion of the court, warrants sanction through the charging of fees. *Chambers*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27. The second category is "bad faith *in bringing an action or in causing an action to be brought.*" *Shimman*, 744 F.2d at 1230; *see also, e.g., San Juan Prods., Inc. v. San Juan Pools of Kan., Inc.*, 849 F.2d 468, 476 (10th Cir.1988). Where a party institutes an unfounded action wantonly or for oppressive reasons, or necessitates an action be filed or defends an action through the assertion of a colorless defense, that constitutes bad faith which is grounds for an award of attorneys' fees. *See* Moore et al., *supra,* ¶ 54.78[3], at 54–440. However, this second form of bad faith must be distinguished from the third category, bad faith in the acts *giving rise to the substantive claim.*

*Id.* (emphasis added). In other words, "an award of attorneys' fees may not be premised solely on prelitigation conduct." *Id.* at 765.

■ Mellon argues he was forced to bring this action and endure over three years of litigation because of Cessna's failure to uphold its clear legal obligation to him. He argues Cessna necessitated the filing of this action and defended it through the assertion of a colorless defense, actions that warrant an award of fees.

The court finds that an award of attorney's fees is not appropriate in this case. Cessna did not raise a frivolous defense, and it did not act vexatiously. Further, it was not motivated by bad faith in defending this lawsuit. Cessna took a business position with regard to the contract at issue, and it was not unreasonable for it to seek an alternative to specific performance of the contract. Therefore, the court finds no grounds to, in effect, punish Cessna for its actions.[3]

## III. Conclusion

The court finds no basis for altering or amending its order of December 2, 1998, granting specific performance of the contract between Mellon and Cessna. The court further finds that an award of attorney's fees and expenses is not warranted in this case. Cessna has not acted in bad faith during the course of this litigation.

IT IS THEREFORE ORDERED this 9th day of August, 1999, that Cessna's motion to alter or amend judgment (dkt.

---

**3.** The court's conclusion would be the same under New York's bad-faith exception to the American Rule.

no. 148) is denied and Mellon's motion for attorney's fees (dkt. no. 150) is denied.