Reva M. KOCIOLEK, et al., Plaintiffs,

v.

A.D. HAGMANN, et al., Defendants.

Civ. A. No. 86–1622.

United States District Court,
District of Columbia.

Jan. 12, 1988.

William W. Osborne, Jr., Washington, D.C., for plaintiffs.

Isaac N. Groner, Washington, D.C., for United Telegraph Workers.

Robert M. Baptiste, Washington, D.C., for Hagmann.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

This intra-union electoral dispute, since mooted by time and events, is terminally before the Court on plaintiffs' application for an award of some $45,000 in attorneys' fees and costs for having, in their view, vindicated the right of union members to have the union's voting rules respected. Defendants have cross-moved for an award of damages of $121,000, to be assessed, in part, against the cash bond posted by plaintiffs as a condition to a preliminary injunction they obtained.

Plaintiffs, members of a labor union, claim that, as prevailing parties in an action that conferred substantial benefit on

their union and fellow members, they are now entitled to attorneys' fees pursuant to the common benefit theory enunciated in *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). Defendants, the union itself and certain of its officials, in turn, ask for damages on the ground that the preliminary injunction should never have issued, and cost them dearly in delaying a sorely needed affiliation with a larger and more prosperous union.

For the reasons set forth below, both motions will be denied.

### I.

These motions mark the end of an action filed on June 12, 1986, by Reva Kociolek, a union official defeated for reelection, and others (including a union local), against the United Telegraph Workers Union ("UTW" or "Union") and members of UTW's International Executive Board ("IEB"), for, *inter alia*, alleged violations of Titles I and V of the Landrum–Griffin Act (the "Act"), 29 U.S.C. §§ 401 *et seq.*, 501 *et seq.* Plaintiffs contended that the participation of improperly selected local delegates in the election at which the affiliation vote was taken deprived Union members of their "equal right to vote" in violation of section 101(a)(1) of the Act.[1] It appears that, at a special convention of the UTW on April 7–11, 1986, delegates had voted to affiliate the UTW with the Communication Workers of America ("CWA") in preference to several alternative suitors. Plaintiffs alleged (and the Union denied) that between four and six of the voting delegates were not properly elected by the memberships of their locals, and that the Union's Credentials Committee had not adequately reviewed their eligibility prior to the balloting. The proposed affiliation was approved by a single vote, and, following the special convention, the UTW and CWA promptly negotiated an affiliation agreement which the UTW scheduled for a ratification vote of its membership-at-large to be conducted by mail in mid-June, 1986.

On June 13, 1986, this Court denied plaintiffs' application for a temporary restraining order to enjoin distribution of the mail ballots. On July 9, 1986, however, after further proceedings, it entered a preliminary injunction directing that all ballots returned be impounded, and that defendants refrain from any further action to implement the UTW–CWA affiliation pending a hearing on the merits. It found that plaintiffs' evidence of irregularities at the special convention, if unrefuted at trial, would likely establish violations of their rights under the Act, and that plaintiffs' efforts to obtain redress within the Union had met with indifference and/or procedural evasion. The Court made *no* express findings of wrongdoing by the Union or the IEB, however, and relied primarily upon the balance of equities, the irreparability of the harm were the merger to be consummated, and the public interest in fairly conducted union elections, in determining to maintain the *status quo* until the merits could be heard. It also conditioned the relief upon the posting of an injunction bond in the amount of $75,000.

Three months later, and before the case could be set for trial, the Union held its regular convention in due course October 6–10, 1986, at which the matter of affiliation was considered anew. This time meticulously correctly elected delegates voted, by a margin of better than four to one, in favor of affiliation with the CWA. An affiliation agreement was again promptly negotiated, approved by an even larger margin, and formally executed by the UTW on October 17, 1986. The action taken at the regular convention thus effectively mooted the controversy, leaving the only issues remaining before the Court those of plaintiffs' entitlement to recoup their attorneys' fees and defendants' request for an award of damages on the injunction bond.

### II.

■ Limited exceptions to the traditional American Rule disallowing awards of attor-

---

**1.** Plaintiff Kociolek also brought a separate proceeding before the Department of Labor, under Title IV of the Act, with respect to the same election at which she lost her position as a union officer. In October, 1986, the Department of Labor found that Kociolek had failed to timely pursue her remedies within the Union and dismissed her complaint.

neys' fees to prevailing litigants (absent statutory or contractual authorization) have been made "when overriding considerations of justice seem to compel such a result." *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967). The "common benefit" exception permits an award of fees to a plaintiff whose suit confers a "substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them." *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 393–94, 90 S.Ct. 616, 626, 24 L.Ed.2d 593 (1970). In *Hall v. Cole* the Supreme Court applied this rationale to section 101(a) lawsuits under the Act, holding, that by vindicating his own right of free speech, a plaintiff union member had "necessarily rendered a substantial service to his union as an institution and to all of its members [by] dispel[ling] the 'chill' cast upon the rights of others," 412 U.S. at 8, 93 S.Ct. at 1948, and required the union to reimburse him his attorneys' fees.[2]

■ Plaintiffs here contend that their initiation of the lawsuit and successful pursuit of the preliminary injunction precipitated the second (and concededly valid) merger vote at the October, 1986, regular convention, thereby qualifying them as prevailing parties, notwithstanding the absence of a final adjudication in their favor. *See, Bauman v. Presser*, 119 LRRM 2192, 2193 (D.D.C.1985) [Available on WESTLAW, 1985 WL 17377]; *Taylor v. Great Lakes Seamen's Union, Local 5000*, 657 F.Supp. 550, 123 LRRM 2092, 2098 (N.D.Ohio 1985). On the other hand, the fact that the Union acted in a manner to abate the controversy between itself and its restive members does not mean that the Union was originally in the wrong, nor that the dissidents' resort to litigation necessarily forced the resolution of it.

When issuing its preliminary injunction of July 9, 1986, this Court, as previously noted, made no findings of wrongdoing by the Union at the special convention of April, 1986. It acted principally to preserve the *status quo.* Although plaintiffs presented some evidence of less than scrupulous adherence to the rules of delegate selection, the truth of those allegations, as well as the Union's motivation, remained then, as now, unresolved. As the Court of Appeals observed in *Bunz v. Moving Picture Mach. Operators' Protective Union*, 567 F.2d 1117, 1124 n. 53 (D.C.Cir.1977), the right to relief under section 101(a)(1) of the Act, including awards of attorneys' fees, may well depend upon ultimate determinations of fact that have never been made here. *See also, Monzillo v. Biller*, 735 F.2d 1456 (D.C.Cir.1984).

The irregularities alleged, if such they were, in the selection of a small number of delegates to the special convention are, on this record, as likely consistent with innocent informality (or perhaps the sense of fiscal urgency pervading the special convention) as with a conspiracy on the part of the Union hierarchy to rig the election. And the seriousness of any technical rule violations may truly be *de minimis*, since the now-unsealed ballots, and the subsequent vote at the October, 1986, regular convention demonstrate that the vast majority of the UTW's membership has at all times favored an affiliation with the CWA both before and after this lawsuit, and without regard to the tidiness of the manner in which the proposal may have been put to a vote.[3]

---

**2.** The UTW contends that Kociolek's motivation in challenging the delegate selection was to preserve her own status as a Union officer. Even if true, however, it does not preclude the award of attorneys' fees. *Hall*, 412 U.S. at 14–15, 93 S.Ct. at 1950–51. A substantial benefit conferred on union members generally is no less so because plaintiff's own motives were not altogether altruistic. *See Pawlak v. Greenawalt*, 713 F.2d

972, 980 (3rd Cir.1983), *cert. denied*, 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 172 (1984).

**3.** On February 13, 1987, the Court permitted the impounded ballots to be counted. Of the total of 4,050 ballots received (of which 160 were challenged and not opened), 3,103 were cast in favor of, and 783 against, the UTW merger with the CWA.

Nor does the Union's action in conducting a second election on the merger evince an acknowledgment that it had erred at the first. The Union's parlous financial situation, which had prompted the Union to pursue a merger with CWA in the first place, grew more, not less, so during the litigation. Necessity, not guilt or fear of judicial retribution, drove the Union to bring the business of an affiliation agreement to another vote at the earliest opportunity. Neither the Union nor its members appear to have derived any substantial benefit from this litigation. The application for attorneys' fees will be denied.

### III.

Defendants, in their turn, seek damages against the cash injunction bond posted by plaintiffs on the ground that the preliminary injunction of July 9, 1986, was wrongfully issued. Fed.R.Civ.P. 65(c) provides for the payment of such damages "as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."[4]

The record at the time of entry of the preliminary injunction, however, shows that the injunction was not improvidently entered. Plaintiffs made a *prima facie* showing of improprieties at the special convention, and the Union was adamant in its refusal to accede to a voluntary delay of the affiliation process, leaving the Court no alternative but to issue an injunction. The Union then chose not to appeal. The merits of plaintiffs' application for the preliminary injunction, as distinguished from those of the case itself, were thus established at the time, and they have not been discredited by subsequent events. *Compare Northeast Constr. Co. v. Romney,* 485 F.2d 752 (D.C.Cir.1973). The same factual disputes which remain unresolved, and, in part, preclude an award of attorneys' fees to plaintiffs, also militate against a recovery of damages by defendants. *See Coalition for Legal Services v. Legal Services Corp.,* 597 F.Supp. 198, 201

(D.D.C.1984); *Meeker v. Stuart,* 188 F.Supp. 272, 276 (D.D.C.1960), *aff'd* 289 F.2d 902 (D.C.Cir.1961). Defendants' motion for damages on the bond will likewise be denied.

It is, therefore, this 7th day of January, 1988,

ORDERED, that plaintiffs' application for attorneys' fees and costs is denied; and it is

FURTHER ORDERED, that defendants' "motion for an order requiring plaintiffs to pay damages" is denied; and it is

FURTHER ORDERED, that this case is dismissed as moot.

---

4. The elements of damage claimed by defendants consist of additional expenses to the Union occasioned by having to react to the lawsuit of $86,000, including $27,000 in legal costs, and

attorneys' fees for the individual defendants of $35,000. The individual defendants, however, declined plaintiffs' offer to dismiss as to them.